

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. R. Miller
Commissioner
Texas Unemployment Compensation Commission
Brown Building
Austin, Texas

Dear Sir:

Opinion No. O-3161
Re: Are the parties to the attached memorandum agreement partners under the Texas Unemployment Compensation Act.

We have your request for an opinion of this Department as upon the following questions:

1. Are the parties to the memorandum of agreement partners?

2. Is the party of the second part in such memorandum of agreement in the employment of the parties of the first part under the present unemployment act?

3. Was the party of the second part in the employment of parties of the first part under the employment act prior to its amendment on April 1, 1939?

You have submitted for our consideration certain assumed name certificates, affidavits, and copy of a contract. Our opinion will be based on the information now before us. The contract in question is rather lengthy and would unduly lengthen this opinion if quoted in full here.

The contract before us is that of F. L. Strange, Sr. and Charles McAden, parties of the first part, and R. M. Dosher, party of the second part, and a subsequent affidavit regarding contract between C. A. McAden and M. M. Dosher. The first

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. C. R. Miller, page 2

contract was executed December 3, 1937, and continued in
existence until April 1, 1939. The affidavit of C. A. McAden
states that the subsequent contract between him and Dosher
contained the same provisions as the first contract mentioned.

The memorandum of agreement marked Exhibit "A" is
the original contract executed by Strange, McAden and Dosher.

The affidavits submitted disclose practices which
are not in accord with the terms of the contract between the
parties; this being an inquiry into the relationship between
the parties, we think it necessary to look to the contract
and to the facts before us.

Article 5221b, Section 17 (e) reads:

"'Employing unit' means any individual or
type of organization, including any partnership,
. . ."

Article 5221b, Section 17 (g) (1) reads:

"(g) (1) 'Employment' subject to the other
provisions of this subsection, means service, in-
cluding service in interstate commerce, performed
for wages or under any contract of hire, written
or oral, express or implied, provided that any
services performed by an individual for wages shall
be deemed to be employment subject to this Act
unless and until it is shown to the satisfaction
of the Commission that such individual has been
and will continue to be free from control or direc-
tion over the performance of such services both
under his contract of service and in fact."

Article 5221b, Section 17 (o) reads:

"(o) 'Wages' means all remuneration payable
for personal services, including commissions and
bonuses and the cash value of all remuneration
payable in any medium other than cash. . ."

The contract submitted indicates that there is an
"employing unit" in this instance. The statutory definition
of wages is broad enough to include the weekly wage paid to

Hon. C. R. Miller, page 3

Dosher and also includes his commissions. Let us now determine if the contract is one for services or is a partnership agreement.

Referring to the articles of agreement or the contract between these parties, we notice that in the first paragraph F. L. Strange, Sr. and Charles A. McAden recite that they are the parties of the first part and that they are the owners of restaurants in McLennan, Travis and Bexar Counties. The restaurant under question is in Bexar County.

In paragraph No. 2 of the contract the parties of the first part agree to assign to party of the second part one-third share in the net profits of the business and to pay him a weekly salary of $20.00 per week so long as he devotes his time and attention to said business as manager thereof. In the same paragraph it is provided that any proposed change in the policy and conduct of the business must be agreed upon by one of the parties of the first part; further that party of the second part is bound to carry out the purposes and designs of the parties of the first part in the management of the business; that he (Dosher) has no authority to make and enter into contracts of any kind that will be binding upon the parties of the first part without first obtaining their consent in writing; that while he is in control of the business, he must promptly deposit all funds in the South Texas National Bank of San Antonio, Texas, to the credit of the Chicken Shack and operate the business with care and caution, having due regard for the wishes and policy of the parties of the first part, and being familiar with the manner and form in which such business is operated he adhere to same, and not seek to alter or change in any way without the consent necessary as herein stated.

In paragraph No. 3 of this contract it is provided: "All help must meet with approval of either of the parties of the first part, otherwise the said H. M. Dosher will immediately discharge said employees and will employ parties meeting with the approval of all concerned."

Paragraph 4 of the contract provides that the party of the second part will use the accounting system specified by parties of the first part.

Hon. C. R. Miller, page 4

Paragraph 5 provides that it is "understood and agreed that at any time party of the second part should leave employment of parties of the first part by cause of dismissal, discharge or death of party of the second part then he or his heirs shall be paid in cash and proper accounting made thereof of his one-third interest in operation of said business. . ."

It cannot be disputed that under the terms of this contract Dosher is not free from control of the parties of the first part.

There are many definitions of partnerships, both by the courts and authors. There are also different essentials which have been held to be the test of the existence of a partnership relationship. Some courts have applied the profits and loss test; others look to the control of the business, together with other surrounding facts. The intention of the parties is the test used in many instances.

The courts of Texas have refused to conclude that sharing in the net profits of a business is sufficient to constitute a partnership. The Supreme Court of Texas in the case of Freeman vs. Huttig Sash and Door Company, 153 S. W. 122, makes the relation assumed by the parties the criterion of partnership and recognizes that profit-sharing is one test of that relation.

Upon this subject 32 Texas Jurisprudence p. 244 has this to say:

"The fact of profit-sharing is not alone sufficient to establish the existence of a partnership relation among the sharers; it is only an evidentiary fact; other elements must concur and be considered. As between third persons and an alleged partnership, profit-sharing is evidence of partnership, whereas as between themselves the actual intent of parties to be or not to be partners determines. . ."

We think we can safely say that the existence of the ownership of one-third of the net profits of the business in this instance, together with the one-third ownership in the stock on hand does not constitute Dosher a partner. The lease, the building, and the fixtures are the property of the

Hon. C. R. Miller, page 5

parties of the first part and ownership does not vest in the three contracting parties. The stock on hand in this instance represents perishable foods almost exclusively.

In 20 R. C. L. p. 831, we find this statement:

"The particular test as to the existence of the partnership relation which is most widely accepted today and which is applicable especially as between the parties themselves irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. . . . On the other hand, if the terms of the contract existing between the parties do not constitute a partnership, none will be declared, even though the parties in words call the arrangement one. . ."

In this contract what right did Dosher have to fix the policies of the business, to contract for the business, to control the business and make the ultimate decision on the personnel of the business?

The parties of the first part were careful to state in the contract that they were the owners of the place of business in San Antonio; that all proposed changes in policy and conduct of the business must be agreed upon by them; that the party of the second part had no authority to make or enter into any contracts of any kind; that all help must meet with the approval of the parties of the first part; and the kind of accounting system was specified by the parties of the first part.

In paragraph 5 the contract definitely makes provision for the liquidation of Dosher's interest in the event of "dismissal or discharge." The intention of the parties in this contract appears clear to us. The intention of McAden and Strange was to employ a manager of their business in San Antonio giving him an interest in the net profits in order to promote his personal interest and best efforts in the management of the business.

Mr. Dosher does acquire an interest in the net profits of the business under this contract but as compensation for his services; he does not have control over the business nor does he have ownership in the permanent assets of the business. The contract does not evidence a true intention of the contracting parties to form a partnership.

The authorities of other States support our position that one receiving a share of the profits of a business as compensation for services is not thereby made a partner. See Breinig v. Sparrow, 80 N. E. 37; Bond v. May, 78 N. E. 37; In Re Clarence Scott C. C. H. Unemployment Insurance Service, N. Y. page 35566; Wagner v. Buttles, 139 N. W. 425.

In Wisconsin in the case of Wagner v. Buttles, 139 N. W. 425, the court said that the definition of partnership is elusive and difficult of application because: "Where it appears that one should share in the profits of an enterprise as compensation for services, property, or opportunity furnished by him in aid of the business, no partnership results. He must share in the profits as such and not as compensation for service or property, or the parties do not become partners."

After reading the many authorities in this State upon the subject of partnerships and the cases, particularly Walker-Smith Company vs. Roan, 43 S. W. (2d) 1108; Buzard vs. Bank of Greenville, 2 S. W. 54; Murray Ginning System Co. vs. Exchange National Bank, 61 S. W. 508, and the most recent reported decision upon this subject found in In Re: Zelts, an opinion of the Appellate Court of Indiana rendered January 23, 1941, not yet reported, we are convinced that the contract did not constitute a partnership between the contracting parties prior to April 1, 1939.

The affidavit of Mr. McAden recites that the contract was the same after the change in the contracting parties on April 1, 1939; however, a copy of the certificate of assumed name filed in Bexar County, Texas, on the 11th day of December, 1939, lists both McAden and Dosher as partners.

You have submitted a contract or memorandum of agreement and asked if the parties are partners under that agreement. We think not.

The affidavits submitted indicate a departure from the terms of the contract in a few instances. The variance, in our opinion, is not sufficient to preclude the Unemployment Compensation Commission from making a finding that Dosher is not free from control or direction under his contract and in

fact. Under the definition of employment quoted on page 2 of this opinion the burden of satisfying the Commission of the freedom of control or direction is upon the party asserting such freedom. Your Commission should determine from all of the facts if that burden has been discharged.

As it is admitted that the terms of the contract existing between the parties after April 1, 1939, remained the same, we do not think that the new contract created a partnership.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Morris Hodges.*

Morris Hodges
Assistant

MH:M

APPROVED MAR 5, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN